(64 App. Div. 593.)

## RIPSOM v. HART et al.

(Supreme Court, Appellate Division, Fourth Department.   October 18, 1901.)

1. SPECIFIC PERFORMANCE—UNCERTAIN CONTRACT.
    An agreement by a grantee as part of the consideration for a convey-
    ance to give the grantors his entire estate at his death is too uncertain
    to be enforced.
2. SAME—EVIDENCE.
    Where no writing was drawn of an agreement to give grantors all of
    the grantee's property at his death, and the only evidence establishing it
    is that of the wife of one of the alleged parties, who is interested for her
    children, who are the real parties in interest, and it appears that at the
    time of the conveyance cash payments were made, the evidence is insuffi-
    cient to establish the contract.

Appeal from special term, Monroe county.

Action by Richard Ripsom against John Hart and John Helling
individually and as executors of John Och, deceased, and others.
From a judgment in favor of defendants dismissing plaintiff's com-
plaint, plaintiff appeals.   Affirmed.

This is an action brought to compel specific performance of a con-
tract by which decedent agreed to give his entire estate to plaintiff
and Augustus Ripsom at his death.   Plaintiff alleged that he and
Augustus Ripsom and their wives executed a quitclaim deed of their
respective interests in certain land of the decedent on a stated con-
sideration, and as part thereof decedent agreed to give his entire es-
tate to the grantors.   The heirs of Augustus Ripsom brought a
similar action.

The following is the opinion of DUNWELL, J., delivered at spe-
cial term:

The foregoing actions were tried together, the same evidence applying to
each.  From a careful reading of the decisions of the courts of this state I
am convinced that the plaintiffs do not present such a case as entitles them
to judgment.  The contract sought to be established depends wholly upon
the testimony of Mrs. Irish, the wife of one of the alleged parties to the
contract, since deceased, who is interested for her children, who are the real
parties in interest to the extent of one-half of any recovery in the event of
plaintiff's success.  There are a number of reasons why she may be mis-
taken about a contract having been made.  It may be true that what she
supposes became a contract was considered and talked over; that the Rip-
som brothers acceded to the sale of their interests upon the supposition that
Och, at his death, would be more apt to leave his property to them than any
one else, they being his only relatives in this country at that time.  Och
himself may have said so, and yet may not have entered into a contract to
that effect.  There are obvious facts and circumstances tending to contradict
the making of a contract.  No writing was drawn, although it was necessary
to resort to writings in conveying the property.  So long as a part of the
transaction required a writing, why was plaintiff's important interest in the
transaction left to memory only?  Each of the plaintiffs, at the time of the
conveyance, received a cash consideration of $400.  This is, in some degree,
inconsistent with the idea of other consideration.  "Alleged oral dispositions
of estates, to take effect in the future or after death, should not be found or
supported unless established by abundant evidence of the most satisfactory
and convincing character."  Gaylord v. Gaylord, 7 N. Y. St. Rep. 703; Edson
v. Parsons, 155 N. Y. 555, 50 N. E. 265; Gall v. Gall, 64 Hun, 600, 19 N. Y.
Supp. 332.  The evidence in this case, in my judgment, falls below the re-
quirements of these authorities.  The cases in this state where parol agree-

ments have been enforced by specific performance are where the party invoking the aid of the court has performed labor or made improvements upon property, or rendered consideration following the bargain or in pursuance of it. Here the only consideration moving from the plaintiffs was a present one,—the parting with their title. They cannot support their contention, as has been done in most reported cases, by acts done subsequently, that could only be explained upon the theory that what was done was in pursuance of a contract, thereby supporting the alleged existence of a contract. This contract is devoid of such support. If, however, the evidence was sufficient to establish the contract in controversy in this case, it has not been the practice of courts of equity in this state to enforce such a contract by reason of its uncertainty. It permitted deceased to possess, control, and absolutely dispose of his property so as to devest himself of all title thereto during his life if he saw fit, leaving it uncertain whether he would have any property at his death. In Shakespeare v. Markham, 10 Hun, 324, it was said: "It was not specifically agreed in what manner the property of the testator was to be conveyed or secured to the other parties. It was to be used and controlled by him during his life. There was no restraint by the supposed contract upon the testator's power to dispose of the same, or any part thereof, during his life; and the amount which he should leave at his death was therefore wholly uncertain. The contract, therefore, by reason of its uncertainty, was one which a court of equity would not be under the necessity of compelling performance of." I must hold that the evidence is not sufficient to establish the contract, and that such a contract cannot be enforced in this court by reason of its uncertainty, and that the complaint must be dismissed in each case, but with costs to defendants in one case only.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

David N. Salisbury and W. W. Armstrong, for appellant.
Richard E. White, for respondents.

PER CURIAM. Judgment affirmed, with costs, on opinion of DUNWELL, J., delivered at special term.

---

(65 App. Div. 276.)

MAGNOLIA METAL CO. v. PRICE.

(Supreme Court, Appellate Division, First Department. November 15, 1901.)

1. CONTRACTS—RESTRAINT OF TRADE.
    Defendant contracted to enter plaintiff's employ and not to connect himself with any company or firm engaged in business similar to the plaintiff's for five years after his connection with plaintiff might be severed. Plaintiff was engaged in the manufacture of a patented metal, and defendant was given a confidential position, acquiring knowledge of great value to the plaintiff in the conduct of its business, and of its business methods, its customers and its competitors. *Held*, that the contract was not void as in restraint of trade, and that defendant, on resigning his position with the plaintiff, would be restrained from entering a company organized to compete for plaintiff's trade, and from using the knowledge gained while in plaintiff's employ,

2. SAME—ABROGATION BY MUTUAL CONSENT.
    Defendant agreed to enter plaintiff's employ for three years, and so long thereafter as should be mutually satisfactory, and, in the event of the relations being severed under the agreement, not to connect himself with any firm or company engaged in a similar business for five years from the date of the severance. It was provided that plaintiff might terminate the contract for certain misconduct of defendant, and that death of the defendant, or disability by illness for 30 consecutive days,